UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT DRYE, et al., | Case No. 2:23-cv-00943-RFB-NJK |
| Plaintiffs, | **ORDER** |
| v. | |
| GLATFELTER CLAIMS MANAGEMENT, INC. et al., | |
| Defendants. | |

### I.   INTRODUCTION

Before the Court is Defendant Glatfelter Claims Management's Motion to Dismiss (ECF No. 9), and the parties' stipulation for extension of time to file a response to the Motion to Dismiss (ECF No. 12). For the reasons stated below, the Court grants the motion to dismiss in part and denies it in part. The Court grants the parties stipulation *nunc pro tunc*.

### II.   PROCEDURAL BACKGROUND

Plaintiff commenced this action by filing a complaint in the Eighth Judicial District Court for Clark County, Nevada on April 6, 2023. ECF No. 1-1. Defendants filed a petition for removal on June 16, 2023 based on diversity jurisdiction. ECF No. 1. On June 23, 2023, Defendant Glatfelter Claims Management filed the instant Motion to Dismiss. ECF No. 9. Defendant American Alternative Insurance Corporation filed a joinder to the Motion to Dismiss on July 12, 2023. ECF No. 14. On July 6, 2023, the parties filed a stipulation for extension of time for Plaintiff to respond to the motion. ECF No. 12. The motion was fully briefed on July 16, 2023. On July 28, 2023, the parties filed a joint stipulation to stay discovery pending resolution of the Motion to

Dismiss. ECF No. 17. The Honorable Nancy J. Koppe, United States Magistrate Judge, granted the stipulation on July 31, 2023. ECF No. 18. The Court held a hearing on the motion to dismiss on February 6, 2024. This order follows.

### III.  FACTUAL ALLEGATIONS

Plaintiffs Robert and Jacqueline Drye bring this coverage action as assignees of the insured, Leonardo Joseph N. Mateo. The following factual allegations are drawn from Plaintiffs' complaint. On December 14, 2015, Robert Drye entered into a contract with Akamai to provide non-medical, personal care to his mother, Jacqueline Drye, under NRS 449.0021. Jacqueline was an intended third-party beneficiary of the terms of the contract between Robert and Akamai. Mateo was an employee of Akamai and assigned to provide care to Jacqueline under the contract.

On December 24, 2015, Mateo was to provide in-home personal care to Jacqueline. Mateo failed to monitor Jacqueline and left Jacqueline alone in her residence. As a result of having to care for herself, because of the absence of her personal care provider, Jacqueline was severely and permanently injured.

On December 24, 2015, Mateo, as an employee of Akamai, was insured through Glatfelter Claims Management, Inc and insured through American Alternative Insurance Corporation. After the incident, Gladioli Dauz, the owner, sole administrator and supervisor of Akamai, stated in an email that she, on behalf of Akamai, was taking responsibility for the incident, caused by its caregiver, Mateo.

On December 13, 2016, Mateo was served with the Summons and the Complaint. On April 6, 2017, the Clerk of the Court entered a Default against Mateo. On February 22, 2018, Plaintiffs filed their Application for Default Judgment against Mateo pursuant to NRCP 55(b). On April 18, 2018, Plaintiffs served their three-day notice of intent to take default judgment against Mateo via U.S. mail. On April 19, 2018, Plaintiff filed the three-day notice of intent to take default judgment against Mateo. On June 26, 2018, Plaintiffs Application for Default Judgment and Request for NRCP 54(b) certification against Mateo came before the courts consideration.

On September 5, 2018, the Court granted Plaintiffs Application for Default Judgment against Mateo for $403,820.93 for past damages with prejudgment interest thereon at the rate provided by law from December 13, 2016, until June 25, 2018, in the sum of $38,047.93; and post-judgment interest on the sum of $441,868.86 at the rate provided by law from the date of the judgment itself (September 5, 2018). The judgment entered on September 5, 2018, also granted Plaintiffs' request for NRCP 54(b) Certification for Mateo.

On August 27, 2020, Plaintiffs filed their Application for a Judgment Debtor Examination of Mateo. The Application for Judgment Debtor was granted by the court on July 26, 2021.The Judgment Debtor, Mateo, was ordered to appear for a judgment debtor examination. On February 17, 2022, Timothy Ducar, Esq., took the judgment debtor exam of Mateo. The Judgment Debtor examination found that Mateo was homeless, did not have a bank account, was not the beneficiary of a life insurance policy, will or trust, and owned nothing of value. The judgment was deemed uncollectible from Mateo. At the Judgment Debtor examination Mateo confirmed that he worked for Akamai for one day, the day of the incident with Jacqueline.

This action is now brought to pursue the judgment against Mateo from Glatfelter Claims Management, Inc and American Alternative Insurance Corporation who insures Malama Ohana Group, LLC, d/b/a Akamai Senior Services for their failure to defend Mateo in the prior lawsuit and their failure to pay the judgment. On April 21, 2023, a notice of entry of order granting Plaintiffs' motion for judicial assignment was filed.

Defendants' failure to defend and indemnify Mateo following the incident on December 24, 2015, was a material breach of their contract. Defendants misrepresented pertinent facts or insurance policy provisions relating to claims at issue to Mateo and/or claimants. Defendants failed to acknowledge and act reasonably promptly upon communications with respect to the claim arising on December 24, 2015, concerning Mateo. Defendants failed to adopt and implement reasonable standards for prompt investigation and processing of claims. Defendants failed to effectuate a prompt, fair and equitable settlement of claims in which their liability had become reasonably clear.

Defendants breached this covenant of good faith and fair dealing by its refusal to pay the damages they are responsible for by way of their employee, Mateo, thereby exposing him to an excess judgment.

Based on the above alleged facts, Plaintiffs bring the following claims against Defendants: breach of contract, breach of implied covenant of good faith and fair dealing (bad faith), and an Unfair Claims Practices action under NRS 686A.31.

### IV.     LEGAL STANDARD

#### a. Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## V.  DISCUSSION

Defendant Glatfelter Claims Management, joined by Defendant American Alternative Insurance Company, move to dismiss all of Plaintiff's causes of action.

### a.  Materials Outside the Pleadings

Plaintiffs first argue that Defendant Glatfelter's reliance on certain outside materials requires the Court to convert the motion to dismiss into a motion for summary judgment. The Court disagrees.

If the district court relies on materials outside the pleadings submitted by either party to the motion to dismiss, the motion must be treated as a Rule 56 motion for summary judgment. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). Two exceptions to this rule exist: "the incorporation by reference doctrine and judicial notice under Federal Rule of Evidence 201." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" Fed. R. Evid. 201(b). A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Khoja, 899 F.3d at 999 (citing Fed. R. Evid. 201(b)(1)–(2)). Courts may "take judicial notice of undisputed matters of public record," including "documents on file in federal or state courts." Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

Exhibits 1-4 are all filings from the underlying state court action that are not subject reasonable dispute. This includes the Complaint (Exhibit 1), the Entry of Judgment (Exhibit 2), Entry of Order of Default (Exhibit 3), and entry of order granting Plaintiff's Motion for Judicial Assignment (Exhibit 4). Therefore, the Court will take judicial notice of Exhibits 1-4. As the Complaint references the insurance contract and it necessarily forms the basis of Plaintiffs' claims, the Court will consider the Insurance Policy/Contract (Exhibit 5) as incorporated by reference into the complaint. Lee, 250 F.3d at 688; see also United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

### b. Breach of Contract

"An insurance policy [typically] creates two contractual duties between the insurer and the insured: the duty to indemnify and the duty to defend." Nautilus Ins. Co. v. Access Med., LLC, 482 P.3d 683, 687 (Nev. 2021). "These duties are distinct, but related." Id. The "duty to defend is broader than the duty to indemnify because the insurer must defend even claims that the third party does not ultimately prove." Id. at 691.

Plaintiffs' claim for breach of contract claim is based on Defendant's alleged failure to defend and indemnify and not on any other specific provisions of the insurance policy.

Defendant Glatfelter argues that Plaintiffs breach of contract claim fails because the complaint does not allege that Mateo ever tendered the defense to the insurers. Glatfelter relies on a Texas Supreme Court case, Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker, 246 S.W.3d 603, 607 (Tex. 2008), to argue the duty to defend does not arise until the insured tenders the defense to the insurer.[1] The Court does not find that this is the law in Nevada.

Although the tender of the defense to the insurer is a sufficient precondition to trigger the duty to defend, see Allstate Ins. Co. v. Miller, 212 P.3d 318, 325 (2009), Glatfelter does not identify, and the Court is not aware of any Nevada Supreme Court opinion which has held that the tender of the defense to the insurer is also a necessary precondition.

Rather the Nevada Supreme Court has consistently held that the duty to defend should be interpreted broadly. "[A]n insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." Benchmark Ins. Co. v. Sparks, 254 P.3d 617, 621 (Nev. 2011). "There is a potential for indemnification when the allegations in the third party's complaint show that there is 'arguable or possible coverage,' or when the insurer 'ascertains facts which give rise to the potential of liability under the policy.'" Nautilus, 482 P.3d at 687-88 (internal citations and quotation marks omitted). "If there is any doubt

---

[1] Plaintiffs argue that it was Mateo's employer's duty to tender the defense, not Mateo's. Even if it were Akamai's duty to tender the defense, neither the Complaint or the court filings submitted by Plaintiffs allege or demonstrate that Akamai actually tendered the defense to the Defendants. Plaintiffs cite the state court Complaint against Akamai to support this argument, but the Complaint does not name or mention the Defendant Insurers.

about whether the duty to defend arises, this doubt must be resolved in favor of the insured." Id. at 1158. Courts construe the duty to defend broadly "to prevent an insurer from evading its obligation to provide a defense for an insured without at least investigating the facts behind the complaint." Id.

However, the duty to defend is not absolute. "Because the duties undertaken by an insurer are dictated by the terms of its contract with the policyholder, an insurer is free to contractually limit these duties—that is, to contract its way around this general rule." Benchmark, 254 P.3d at 621. "Insurance policies are contracts of adhesion; therefore 'any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured.'" Id. A provision in an insurance policy is ambiguous "if it is reasonably susceptible to more than one interpretation." Id.

Based on the foregoing, the Court finds that Plaintiffs plausibly plead that Defendants ascertained facts which would give rise to potential liability and/or were on notice of the potential for indemnification of Mateo. For instance, the complaint alleges Mateo, as an employee of Akamai, was insured by Defendants. Defendant's Exhibit 1, which the Court has judicially noticed, shows that Plaintiff brought suit against both Mateo and Akamai in 2016. The complaint further provides that the owner of Akamai took full responsibility for the incident caused by its employee, Mateo. The complaint also alleges that Defendants received communications with respect to the claim arising on December 24, 2015, concerning Mateo. The complaint thus plausibly pleads that the duty to defend was triggered. Later, when the default judgment was entered against Mateo, the duty to indemnify was also triggered.

Glatfelter is correct that the insurance policy unambiguously states that "this is a claims made policy" but as Glatfelter notes, claims-made policies simply require that transmittal of notice of the claim to the insurance carrier occur during the policy period. Physicians Ins. Co. of Wisconsin v. Williams, 128 Nev. 324, 328, 279 P.3d 174, 176 (2012). The above allegations plausibly allege that the third-party Dryes *did* transmit some form of notice of the claim during the policy period. Glatfelter does not point to language in the insurance policy that requires notice of

7

the claim to come exclusively from the insured as opposed to a third-party.

Glatfelter also argues that their duty was never triggered because there are no allegations that Mateo notified them of the claim and the insurance policy provided that the "insured must notify the insurer as soon as practicable" as a condition to coverage. However, the insurance contract establishes that Akamai was the named insured to the contract, not Mateo. Additionally, it is unclear from the insurance policy language alone what duties the employee versus the employer had in notifying the insurer to trigger coverage.[2] This language is therefore reasonably susceptible to more than one interpretation.

Finally, Glatfelter argues that the breach of contract claim fails because any insurance claim had to be transmitted during the policy period, April 9, 2016 to April 9, 2017, and the complaint in this action was not brought until April 6, 2023. But Glatfelter confuses the period for transmitting notice of an injury claim to the insurance company with the limitations period for bringing a breach of contract claim arising from a breach of that policy. Breach of contract claims are subject to a six-year limitations period unless the policy provides otherwise. NRS 11.190.1(b). Glatfelter does not argue that Plaintiffs' breach of contract claim is barred under the statute of limitations and does not identify any other provision of the policy that would contractually reduce this limitations period.

    **c. Bad Faith**

        i. Statute of Limitations

In Nevada, a claim for bad faith is subject to a four-year statute of limitations covering actions upon a "liability not founded upon an instrument in writing." § 11.190(2)(c); Williams v. Travelers Home & Marine Ins. Co., 740 Fed. App'x 134; Schumacher v. State Farm Fire & Cas. Co., 467 F. Supp. 2d 1090 (D. Nev. 2006).

Glatfelter argues that Plaintiffs' bad faith claim is untimely. They note that the limitations period begins to run for a "duty to defend" claim when a final judgment in the underlying litigation

---

[2] For example, the insurance policy conditions appear to only address employers rather than employees: "If your employee or agent knows of a medical incident, occurrence or offense which may result in a "claim" under this policy, you will not be considered to have knowledge of that medical incident, occurrence or offense until your employee or agent reports it . . . ."

8

against the insured is entered. Because Plaintiffs' bad faith claim is premised on Defendants' failure to defend Mateo, it follows that the statute of limitations commenced when the default judgment against Mateo was entered and expired four years later in September 2022. Plaintiffs respond that the bad faith claim is timely. They argue that the duty to defend was never discharged because "the duty to defend continues throughout any dispute of coverage" and there were multiple opportunities to defend Mateo even after the default judgment was entered. They argue that the duty to defend does not finally discharge until the insurance company makes a final coverage determination on the matter. They interpret Glatfelter's motion to dismiss the complaint as that "final coverage determination" and argue that the statute of limitations began running from the date of the filing of the motion, June 26, 2023.

In Nevada, the general rule concerning statutes of limitation is that "a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." Petersen v. Bruen, 792 P.2d 18, 20 (Nev. 1990). An exception to the rule is the "discovery rule" where the statute of limitations begins running when the "aggrieved party knew, or reasonably should have known, of facts giving rise to damage or injury." G & H Assocs. v. Ernest W. Hahn, Inc., 934 P.2d 229, 233 n.5 (1997). Thus, while the *duty* itself does continue "until the potential for indemnification ceases," Benchmark, 254 P.3d at 621, the limitations period for bringing a claim based on *breach* of this duty begins to run as soon as the party sustains injury, or alternatively as soon as the party discovers the injury.

To the extent that Plaintiffs' bad faith claim is based on Defendants' breach of the duty to defend, Plaintiffs as assignees of Mateo, would have been aware of that breach under the more lenient discovery rule, at the very latest, on the date the Default Judgment was entered in the underlying litigation against Mateo, September 5, 2018. Although Plaintiffs do not allege Defendants ever "unequivocally rejected a tender," the underlying action concluded without Defendants undertaking Mateo's defense. At this point, there was no question that Defendants had refused the defense and/or denied liability. Plaintiffs knew or should have known of the injury giving rise to the bad faith claim and could have initiated such a claim. See Hewlett Packard Co.

v. Ace Prop. & Cas. Ins. Co., 378 F. App'x 658, 659 (9th Cir. 2010). Therefore, the statute of limitations began to run on that date.

Similarly, to the extent that Plaintiffs' bad faith claim is based on Defendants' breach of the duty to indemnify, Glatfelter correctly argues this duty attaches when an "insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1157 (Nev. 2004). Therefore, under Plaintiffs' allegations, Defendants became obligated to indemnify Mateo on the date that the default judgment was entered, September 5, 2018, and breached this duty by not doing so. The limitations period for a bad faith claim based on the duty to indemnify therefore commenced on September 5, 2018 as well.

Plaintiffs appear to argue that the statute of limitations is tolled under some form of the "continuing violation" doctrine because Defendants allegedly continued to breach their duty to defend. Under a "continuing tort" or "continuing violation" theory, the limitations period does not begin to run until the tortious conduct ends. But Plaintiffs cite to no case, and this Court has found no case where the Nevada Supreme Court applied this doctrine to state law tort claims or in the insurance context. See Nickler v. Clark Cnty., 802 F. App'x 262, 264 (9th Cir. 2020) (finding no Nevada state law applying either the continuing violation doctrine or the continuous accrual doctrine to an IIPEA-style tort); McCormick v. Bisbee, 401 P.3d 1146 (Nev. 2017) (declining to address the continuing violation doctrine because plaintiff did not allege a plausible claim; State v. Wyeth, 373 P.3d 964 (Nev. 2011) (declining to apply the continuing violation doctrine to Deceptive Trade Practices Act due to an insufficient record).

Moreover, even if Nevada were to apply the continuing tort doctrine, it would not apply here because Plaintiffs do not allege that any new violations occurred after the default judgment was entered against Mateo. In their opposition, they argue that Defendants "did nothing" and "buried [their] head in the sand." But Defendants' failure to step in after the judgment was entered is simply the continuing effect of their initial denial of liability; not a new violation. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (finding that the "mere 'continuing impact from past

violations is not actionable.'").[3] The Court also does not find that Defendant's Motion to Dismiss is a final coverage determination. Rather, Glatfelter is defending itself in the lawsuit. Accordingly, the Court declines to find that Plaintiffs' bad faith claim is tolled under the continuing violations doctrine.

However, this does not mean that Plaintiffs' entire bad faith claim is barred. Rather it limits the scope of the remedy as Plaintiffs may not base their bad faith claim on anything that Defendants did or did not do before April 6, 2019—four years before the complaint was filed.

ii.  Sufficiency of the Pleadings

The Court now turns to the Complaint to determine whether it states an actionable bad faith claim based on post-April 2019 conduct.

Every insurance contract contains an implied obligation of good faith and fair dealing; violation of this obligation gives rise to a claim of bad faith. Guaranty Nat'l. Ins. Co. v. Potter, 12 P.2d 267, 272 (Nev. 1996). In order to establish a breach of the implied covenant of good faith and fair dealing, the plaintiff must prove the following: (1) the insurance company had no reasonable basis for its conduct in the handling of plaintiff's claim; (2) the insurance company knew, or recklessly disregarded, the fact that there was no reasonable basis for its conduct; and (3) the insurance company's unreasonable conduct was a legal cause of harm to the plaintiff. See Falline v. Golden Nugget Hotel & Casino, 823 P.2d 888, 891 (Nev. 1991) ("Bad faith ... has been defined as 'the absence of a reasonable basis for denying benefits . . . and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."). The reasonableness of an insurer's claims-handling conduct is a factual question, generally left for the jury. Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1162 (9th Cir. 2002).

Plaintiffs' complaint alleges the following post-April 6, 2019 facts: Plaintiffs filed an Application for a Judgment Debtor Examination of Mateo in 2020; the examination was granted

---

[3] The Court also notes that Plaintiffs have failed to plead or argue any facts that justify a delayed accrual of the action under the discovery rule or equitable tolling of the statute of limitations. See e.g., Fausto v. Sanchez-Flores, 482 P.3d 677, 682 (Nev. 2021). "When a plaintiff seeks to equitably toll the limitations period in NRS 11.190(4)(e), the plaintiff must demonstrate that he or she acted diligently in pursuing his or her claim and that extraordinary circumstances beyond his or her control caused his or her claim to be filed outside the limitations period."

in 2021; the examination was conducted in 2022; and the judgment was deemed uncollectible from Mateo in 2022. The Court also considers the following general allegations that Mateo, as an employee of Akamai, was insured through Defendants as well as the allegation that Akamai's owner took full responsibility for the incident on behalf of Akamai. These allegations, taken together and accepted as true, fail to state a claim of bad faith. Critically, these facts do not make any allegations with respect to Defendants' conduct in handling the claim.

Although Plaintiffs also base their bad faith claim on violations of Nevada's Unfair Claims Practices Act, for the reasons stated below, these allegations fail to state a claim upon which relief can be granted. Therefore, Plaintiffs' bad faith claim fails on these grounds as well.

### d. Unfair Claims Practices Act

Nevada's Unfair Claims Practices Act gives insured individuals a private right of action against their insurers "for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 [of the Act] as an unfair practice." NRS 686A.310(2). Subsection 1 provides sixteen causes of action. Plaintiff brings a claim based on subsections (a)-(c) and (e)-(g). Glatfelter argues that Plaintiffs' Unfair Claims Practices cause of action is inadequately pled and barred by the statute of limitations. The Court considers each argument in turn.

#### i. Sufficiency of Pleadings

NRS 686A.310(1)(f) prohibits insurance companies from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered." The Court finds that Plaintiff cannot bring a claim under (1)(f) because it was the Dryes who recovered an amount in an action against the insured, Mateo. The insured, Mateo, never brought his own action and therefore never recovered any amount in an action.

NRS 686A.310(1)(g) prohibits insurance companies from "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of

12

an application. Plaintiffs fail to state a claim under (1)(g) because they formulaically recite the subsection and fail to provide any basic supporting facts such as the identification of any written or printed advertising material.

The Court finds that Plaintiffs fail to state a claim under subsections, (a)-(c) and (d) as well. Subsection (b), (c), and (d) all relate to the failure to act reasonably and promptly in settling, communicating, investigating, and processing the claims arising under the insurance policies. Subsection (1)(a) prohibits misrepresentation to insureds and claimants of pertinent facts or insurance policy provisions. Plaintiffs' complaint merely transforms the statutory language for each of these subsections into supposed factual allegations. Plaintiffs fail to set forth any facts showing that Defendants misrepresented facts relating to coverage, did not respond promptly to communications, or failed to adopt or implement reasonable company standards for the investigation and processing of claims. While the complaint does not need "detailed factual allegations," it requires more than "labels and conclusions." Iqbal, 556 U.S. at 678.

The only provision which is adequately pled is subsection (1)(e), which makes it an unfair practice for an insurer to fail "to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." Plaintiffs have alleged sufficient underlying factual support elsewhere in the complaint that plausibly shows Defendants were on notice of liability and never effectuated a settlement with Plaintiffs.

    ii. Statute of Limitations

A claim based on violation of Nev. Rev. Stat. § 686A.310 must be filed within three years of the triggering event. Because Plaintiff is only able to bring a claim under subsection (1)(e), the Court therefore looks to the time at which Defendants failed to effectuate a prompt, fair and equitable settlement of claims after their liability had become reasonably clear. As with bad faith, Nevada courts have not applied the continuing violation doctrine to Unfair Claims Practices actions and the continuing violation doctrine would be inapplicable here because Plaintiffs fail to allege any new overt act on the part of Defendants (e.g., Plaintiffs requested a settlement decision

and Defendants failed to respond).[4] Therefore, Plaintiffs may not assert the Unfair Claims Practices Act claim against Defendants based on conduct that occurred prior to April 6, 2020—three years before the complaint was filed.

The injury in this case occurred in December 2015. The Dryes commenced their action against Mateo in December 2016. If the triggering event for Defendants' failure to effectuate prompt settlement had not occurred by the time of the commencement of the action against Mateo, it certainly would have arisen when Defendants entirely failed to appear in Mateo's case and default judgment was entered against him, two years later in 2018. Plaintiffs knew by at least September 2018, that Defendants had not *promptly* effectuated a fair or equitable settlement. Their complaint filed over four years later is untimely.

While Plaintiffs may be able to allege an Unfair Claims Practices Act violation based on post-April 2020 conduct, the current allegations for this period all pertain to Mateo's judgment debtor examination and do not describe any conduct on the part of Defendants. Plaintiffs therefore fail to provide factual support showing that Defendants committed any acts after April 6, 2020, which would state an actionable claim under this subsection. The Court thus dismisses this claim.

In sum, the Court denies Defendant's motion as it relates to the breach of contract claim but grants it as to Plaintiffs' bad faith and Unfair Claims Practices Act claims. Plaintiffs may seek leave of the Court to amend their complaint as it is not clear that amendment would be futile. The claims may only be brought based on actionable conduct that occurred after April 6, 2019 (bad faith), and April 6, 2020 (Unfair Claims Practices), respectively.

///

///

///

---

[4] The Court finds that applying Plaintiffs' argument that Defendants' continued refusal to effectuate a settlement effectively tolls the limitations period would defeat the purpose of the three-year statute of limitations. A defendant insurer is often unlikely to change course after initially denying coverage and thus the limitations period would never finally commence.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Glatfelter Claims Management's Motion to Dismiss (ECF No. 9), joined by Defendant American Alternative Insurance Corporation, is **GRANTED in part**. Plaintiffs' bad faith (Count III) and Unfair Claims Practices Act (Count II) claims are dismissed without prejudice. Plaintiffs may seek leave from the court to file a First Amended Complaint.

**IT IS FURTHER ORDERED** that the parties' stipulation for extension of time to file a response to the Motion to Dismiss (ECF No. 12) is **GRANTED *nunc pro tunc.***

DATED: March 27, 2024

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**